# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WWE STUDIOS FINANCE CORP. | * | |
| Plaintiff, | * | Case No.: _____ |
| v. | * | |
| DOES 1-14 | * | COMPLAINT FOR COPYRIGHT INFRINGEMENT |
| Defendants. | * | JURY TRIAL DEMANDED |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff WWE Studios Finance Corp. ("WWE") hereby brings this Complaint against Defendants Does 1-14 (collectively "Defendants"), and in support thereof states as follows:

## NATURE OF THE ACTION

1. This is an action arising under the United States Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, and the common law, for Defendants' unlawful and unauthorized acquisition, reproduction, and distribution of copies of WWE's mainstream copyrighted motion picture *Eliminators* (the "Work").

## JURISDICTION, VENUE AND JOINDER

2. The exclusive jurisdiction of this Court exists pursuant to 28 U.S.C. § 1338(a) for copyright. The jurisdiction of this court similarly exists based on the federal question presented in this case pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1), §1391(b)(2) and §1400(a) because Defendants reside in the District of Connecticut and the State of Connecticut, Defendants committed their infringing activities in the District of Connecticut, and Defendants can be found in this District.

1

4. Pursuant to Federal Rules of Civil Procedure 20(a)(2), joinder of the Defendants in this action is proper because: (A) Plaintiff's claims against the Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences (*i.e.*, the joint unauthorized acquisition, reproduction, and distribution of the same copy of the Work as part of the same BitTorrent "swarm"); and (B) common questions of law or facts will arise out of this action.

## THE PARTIES

5. WWE is a corporation organized and registered under the laws of the state of Delaware.

6. Each Defendant is known to WWE only by the Internet Protocol ("IP") address assigned to that Defendant by his or her Internet Service Provider ("ISP").

7. Through geolocation, the IP addresses used by Defendants have been traced to the State of Connecticut.

8. WWE believes that information obtained in discovery will lead to the identity of each Defendant and will allow WWE to amend this Complaint accordingly. WWE also intends to seek further discovery from the Defendants in order to determine the identity of the specific party responsible for the infringement (*e.g.*, if there are multiple persons in a household that share one IP address).

## TECHNICAL BACKGROUND

### I. *The BitTorrent Protocol*

9. BitTorrent is one of the most common peer-to-peer file sharing protocols, or set of computer rules, used for distributing large amounts of data.

10. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In order to reduce the burden

2

on the source computer, the BitTorrent protocol allocates pieces of a file among peers in a "swarm" of host computers, each of which contains pieces of the file. This allows users to download and upload from each other simultaneously.

11. The BitTorrent protocol allows even a small computer with low bandwidth to participate in large data transfers across a P2P (peer-to-peer) network.

## II. *Uploading and Downloading a Work through a BitTorrent Swarm*

12. The sharing begins when an initial provider intentionally chooses to share a file, in this case a movie, with a torrent network. This initial file is called a "seed."

13. At the time of the seeding, the file is given a unique identifier known as a "hash checksum" or "hash." The hash identifies a particular digital copy of the file for download.

14. Other users (known as "peers"), through a process, connect to the seed to download a file, in this case a movie. When a peer user downloads a piece of the seed, they then host that piece for other peers to download from them.

15. As more and more peers request the same file, each additional user becomes part of the sharing network from which the file can be downloaded. Together, the sum of the many pieces comprises the whole of the file. It is as if each peer is given a piece of a puzzle that they interchange among one another.

16. A group of users that have exchanged different pieces of the same file is referred to as a "swarm."

17. By engaging in the BitTorrent protocol, a user participates in both the downloading and uploading of files in piecemeal portions. In other words, every "node" or peer user who has a copy of the infringing copyrighted material on a torrent network intentionally also becomes a source for other people to copy that infringing file.

18. Because of this, any peer that has downloaded a file before a subsequent peer downloads the same file necessarily becomes a source for the subsequent peer, so long as he or she remains online at the time the subsequent peer downloads the file and remains connected to the swarm.

19. There is substantial peer pressure to remain online and continue to host files for others to download. Users who download more than they upload are referred to as "leeches" and can have their download speeds reduced.

20. The BitTorrent End User License Agreement ("EULA"), accessible on http://www.bittorrent.com/legal/eula, states:

> Automatic Uploading: The Software accelerates downloads by enabling your computer to grab pieces of files from other BitTorrent users simultaneously. Your use of the Software to download files will, in turn, enable other users to download pieces of those files from you, thereby maximizing download speeds for all users. In the Software, only files that you are explicitly downloading or sharing or have downloaded or shared through BitTorrent will be made available to others. You consent to other users' use of your network connection to download portions of such files from you.

21. This cooperative nature of the BitTorrent protocol leads to a rapid viral spreading of a file among peer users, with the likelihood of a successful downloading increasing as more peers join the swarm.

## FACTUAL BACKGROUND

22. At all relevant times WWE has owned and now owns the exclusive rights to the Work, which was made and produced at considerable cost and has significant value.

23. The Certificate of Registration, Registration Number PAu 3-807-717 dated September 8, 2016 is attached hereto as Exhibit A.

24. The copyrighted Work contains a copyright notice advising the viewer that the Work is protected by the Copyright Laws.

25. WWE utilized forensic software to identify the IP addresses of people using the BitTorrent Protocol to unlawfully acquire, reproduce, and distribute the copyrighted Work.

26. The forensic software extracted, filtered and identified the transactions and the IP addresses associated with the unlawful acquisition, reproduction and distribution of the Work, identified by the SHA-1 unique hash: 53FB1F5227AF516DCDA02C0C651326D87D65C813 (the "Unique Hash").

27. Each Defendant initiated his or her infringing conduct by first intentionally connecting and logging into a BitTorrent "Client." A BitTorrent "Client" is a software program that implements the BitTorrent Protocol. There are a number of these software programs, some of the most popular of which include μTorrent and Vuze, both of which can be directly downloaded from the Internet.

28. Each Defendant then used his or her BitTorrent Client to intentionally copy the Work, thereby participating in the swarm on or around the same date.

29. As the Work was copied to each Defendant's computer, each Defendant also distributed the Work by making the downloaded pieces available to all other BitTorrent users seeking to download the Work.

30. Therefore, each Defendant was part of the same series of transactions.

31. WWE's investigations have revealed the particular date and time at which the infringing activity of each defendant was observed as occurring through each identified IP address. A summary of this information is provided in the attached Exhibit B and contains each Defendants' IP address, the ISPs that assigned each IP address, the date and time of the infringement, the location of the IP address, and the hash file the Defendant uploaded. As shown in Exhibit B, each

of the Defendants' infringing activity contained the same hash, and occurred in the same District, on or around the same date.

## COUNT I FOR STATUTORY COPYRIGHT INFRINGEMENT

32. WWE incorporates the allegations of Paragraphs 1 through 31 of this complaint as if fully alleged herein.

33. Defendants willfully infringed upon WWE's Work by participating in the unlawful and unauthorized acquisition, reproduction and distribution of copies of the Work by downloading and subsequently sharing the Work through the use of the BitTorrent Protocol.

34. WWE did not authorize, permit or provide consent to the Defendants to copy, reproduce, redistribute, perform or display the Work.

35. Defendants engaged in this sharing even though the Work contained explicit language warning viewers that unlawful reproduction and distribution without WWE's permission is unlawful.

36. Additionally, numerous press and other reports concerning "file sharing," both generally and particularly in relation to the BitTorrent Protocol, warn users against uploading and downloading copyrighted works without permission.

37. Furthermore, most ISPs specifically state in their User Agreements that the subscriber is not to use their service for the infringement of copyrighted materials. Most BitTorrent Client software applications contain similar explicit language.

38. Despite the numerous aforementioned warnings, Defendants intentionally and willfully used BitTorrent to download, and therefore upload, unauthorized and infringed copies of the Work.

39. Defendants have benefitted from this infringement and WWE has suffered damages to its good will and reputation as well as monetary damages as a result of Defendants' infringing activities, the extent of which cannot be determined at this time.

40. By engaging in the infringement misconduct, Defendants not only deprived the producers of the Work of potential income, but also all persons involved in the production and making of the Work, as well as numerous local theatres and venues in Connecticut, their employees, and ultimately the larger Connecticut economy.

41. Defendants' actions constitute breach of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, for willful violation of WWE's Work resulting in harm to WWE.

42. WWE is further entitled to recover damages from Defendants for its actual damages and any additional profits of Defendants under 17 U.S.C. § 504(a)(1) or, in the alternative, is entitled to an award of statutory damages under 17 U.S.C. § 504(c)(2).

43. WWE is entitled to enhanced damages under 17 U.S.C. §504(c)(2) for willful infringement.

44. WWE is further entitled to recover the costs of bringing this action and attorney's fees under 17 U.S.C. §505.

45. WWE is entitled to such other and further relief as is deemed to be just and proper.

## COUNT II FOR VICARIOUS INFRINGEMENT

1. WWE incorporates the allegations of paragraphs 1 through 45 of this amended complaint as if fully alleged herein.

2. Defendants vicariously infringed upon WWE's Work by participating in, assisting others in, or failing to police others' unlawful and unauthorized acquisition, reproduction and

distribution of copies of the Work by downloading and subsequently sharing the Work through the use of the BitTorrent Protocol.

3. WWE did not authorize, permit or provide consent to Defendants or those that they assisted with the copying, reproducing, redistributing, performing or displaying the Work.

4. Defendants engaged in this sharing, assisted others with sharing the Work, or had knowledge of others sharing the Work and failed to police their conduct, even though the Work contained explicit language warning viewers that reproduction and distribution without WWE's permission is unlawful.

5. Additionally, numerous press and other reports concerning "file sharing," both generally and particularly in relation to the BitTorrent Protocol, warn users against uploading and downloading copyrighted works without permission.

6. Furthermore, most ISPs specifically state in their User Agreements that the subscriber is not to use ISPs' service for the infringement of copyrighted materials. Most BitTorrent Client software applications contain similar explicit language.

7. Despite the numerous aforementioned warnings, Defendants intentionally and willfully used, assisted others to use, or failed to police others' use of BitTorrent to download, and therefore upload, unauthorized and infringed copies of the Work.

8. Plaintiff's Work has been and continues to be used, displayed and distributed without permission as a result of Defendants' intentional and willful use of BitTorrent and/or that of others they assisted or failed to police. Upon information and belief, the stated IP Addresses are owned by Defendants.

9. Defendants' usage has not stopped. As of the date of this filing Defendants are still infringing, assisting other to infringe, or failing to police those who infringe through their internet connection on WWE's Work, damaging WWE.

10. Defendants should have known that the Work did not belong to them or others and took the Work or allowed the Work to be taken anyway.

11. Defendants, or those they have assisted or failed to police, have a direct financial interest in the downloading of the Work.

12. WWE has suffered harm to its reputation and goodwill as well as monetary damages as a result of Defendants, or those they have assisted or failed to police in infringing activities, the extent of which is not able to be determined at this time.

## **PRAYER FOR RELIEF**

WHEREFORE, WWE prays for judgment against each Defendant as follows:

A. That Defendants, and all persons in active concert or participation with them, be permanently enjoined from infringing WWE's Work in any manner;

B. That this Court enter an order of impoundment pursuant to 17 U.S.C. § 503 impounding all infringing copies of the Work, which are in Defendants' possession or under their control;

C. That Defendants be required to pay to WWE either the actual damages that WWE has sustained because of Defendant's willful infringement of the Work and to account for all gains, profits and advantages derived by Defendants, pursuant to 17 U.S.C. § 504 (a)-(b); or for statutory damages in the amount of $150,000 per infringement pursuant to 17 U.S.C. § 504(c)(2).

    D.    That Defendants pay to WWE the costs of this action and that reasonable attorneys' fees be allowed by this Court pursuant to 17 U.S.C. § 505; and

    E.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff WWE Studios Finance Corp, Inc. hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

*/s/ Jan I. Berlage*

Jan I. Berlage (16090)
Gohn Hankey Stichel & Berlage LLP
201 N. Charles Street, Suite 2101
Baltimore, MD 21201
410-752-9300
410-752-2519 (fax)
jberlage@ghsllp.com

*Attorney for WWE Studios Finance Corp.*