IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WWE STUDIOS FINANCE CORP. | * | |
|     Plaintiff | * | Case No.: 3:17-cv-00572-JAM |
|     v. | * | |
| Does 1-14 | * | |
|     Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF WWE STUDIOS FINANCE CORP'S
<u>MEMORANDUM OF LAW IN RESPONSE TO ORDER TO SHOW CAUSE</u>**

Jan I. Berlage (ct16090)
Gohn Hankey Stichel & Berlage LLP
201 N. Charles Street, Suite 2101
Baltimore, MD 21201
410-752-9300
410-752-2519 (fax)
jberlage@ghsllp.com

*Attorney for WWE Studios Finance Corp.*

## TABLE OF CONTENTS

Introduction ..................................................................................................................... 1

Procedural Background .................................................................................................. 2

Factual Background ....................................................................................................... 3

Discussion ...................................................................................................................... 3

    A.    Joinder is Proper Under FRCP 20. ................................................................... 3

    B.    Adopting the Georgia Opinion Approach Unfairly Punishes WWE For the Most Egregious Conduct of Other Copyright Plaintiffs. ...................................................... 5

    C.    Joinder of the Doe Defendants In This Case Promotes Judicial Economy and the Interests of All Parties. ........................................................................................................ 9

        1.    Multiple-Doe Pretrial Litigation Helps Reduce the Size of a Copyright WWE's Individual Demand and Enable Flexible Settlement. .......................................... 10

        2.    Plaintiff's Counsel Has a Record in This Court of Reducing Individual Cases to a Reasonable Number of Defendants. ..................................................................... 11

        3.    Multiple-Doe Pretrial Litigation Allows One Defendant to Benefit From the Work of Another. ............................................................................................................. 12

Conclusion .................................................................................................................... 13

Plaintiff WWE Studios Finance Corp. ("WWE") hereby respectfully files this Memorandum of Law in response to this Court's Order to Show Cause Why All Defendants Other Than a Single John Doe Defendant Should Not be Dismissed for Lack of Proper Joinder [Doc. 9] (the "OSC"):

## INTRODUCTION

In its Complaint ("Compl."), WWE pleads facts which demonstrate that, by use of a BitTorrent swarm at roughly the same time, all relevant conduct of the Doe Defendants are part of "the same transaction, occurrence, or series of transactions or occurrences," and are properly joined under Rule 20(a)(2)(A) of the Federal Rules of Civil Procedure ("FRCP"). Similarly, common questions of law and fact related to this BitTorrent swarm and copyright law will arise in this action. FRCP 20(a)(2)(B). Nevertheless, WWE appreciates the concern that underlies the OSC, namely that multiple-Doe cases may reduce filing costs and encourage litigation abuse. For that reason, WWE has taken a series of precautions to ensure that Doe Defendants are treated reasonably and fairly during pretrial litigation. With those precautions in place, multiple-Doe litigation provides the Doe Defendants with several free-riding benefits (*e.g.* one Defendant's dispositive motion may affect some or all Defendants) and allows for low-cost resolution of meritorious individual claims.

WWE and similarly situated businesses suffer significant harm from infringements of their creative works all over the world, including thousands of infringements in this District. Whatever harm is not felt immediately by companies like WWE is felt by consumers, who must pay more to see a movie or read a book, because it is increasingly difficult for creators to recoup the cost of production. Enforcement of WWE's copyright, then, has both individual and public utility. Multiple-Doe litigation enables this process by providing a mechanism for efficient enforcement

and, simultaneously, reducing the size of the demand placed on any individual infringer. It also preserves this Court's resources by allowing the cases of small groups of similarly situated defendants to be heard at the same time instead of separate, duplicative cases. For these reasons, as explained more fully herein, this Court should find good cause to allow WWE to continue to pursue all Defendants in this action, at least at this early stage of litigation.

## PROCEDURAL BACKGROUND

In November 2016, Judge William S. Duffey, Jr. of the Northern District of Georgia issued an Opinion and Order severing all but one Doe defendant from a multiple-Doe BitTorrent piracy case. *ME2 Prods., Inc. v. Does*, No. 1:16-CV-4055-WSD, 2016 WL 6948333 (N.D. Ga. Nov. 28, 2016) (the "Georgia Opinion").

On April 7, 2017, and "[i]n light of the concerns set forth in" the Georgia Opinion, this Court issued the OSC requiring WWE to file a memorandum of law "explaining why all remaining defendants other than a single John Doe defendant should not be dismissed for lack of proper joinder in this action." Identical Orders to Show Cause were entered in *LHF Productions v. Does*, No. 3:16-cv-01689-JAM, and *WWE Studios Finance Corp. v. Does*, No. 3:17-cv-00572-JAM.

On April 12, 2017, this Court sought similar memoranda in two additional cases: *ME2 Prods., Inc. v. Does*, No. 3:16-cv-01835-JCH, and *ME2 Prods., Inc. v. Does*, 3:16-cv-01838-JCH. This Memorandum of Law addresses the concerns identified in the Georgia Opinion and argues that, at least at the current stage of proceedings in the above-referenced action, joinder is proper and in all parties' best interest.

**FACTUAL BACKGROUND**

The net impact of digital piracy on creative industries like the film industry is enormous. In 2017, Frontier Economics Ltd. estimated the commercial value of digital piracy in film at roughly $160 billion. FRONTIER ECONOMICS LTD., THE ECONOMIC IMPACTS OF COUNTERFEITING AND PIRACY 23 (2017), attached as Exhibit 1. BitTorrent use accounts for about 5% of all internet traffic in North America. *See* Sandvine, 2016 Global Internet Phenomena: Latin America & North America 4 (rev. Jun. 21, 2016).[1] Thus, even though no individual user is stealing a billion dollars-worth of movies, the net effect of BitTorrent and other online piracy is massive.

Though the Department of Justice plays a role in certain types of intellectual property crimes,[2] domestic enforcement of copyright in movies is left largely to the copyright holder. Where, as here, a copyright holder has information demonstrating substantial infringement of a copyrighted work in a single judicial district, the copyright holder may reasonably conclude that actively enforcing its copyright against the worst infringers will have positive, systemic effects on infringement generally. At issue is exactly how that enforcement should be prosecuted.

**DISCUSSION**

**A.     Joinder is Proper Under FRCP 20.**

As a preliminary matter, joinder in this case is proper under FRCP 20(a)(2) governing permissive joinder of defendants, which provides:

---

[1] Available online at https://www.sandvine.com/downloads/general/global-internet-phenomena/2016/global-internet-phenomena-report-latin-america-and-north-america.pdf .

[2] DOJ enforcement prioritizes three areas: "(1) public health and safety, (2) theft of trade secrets and economic espionage, and (3) large-scale commercial counterfeiting and piracy." U.S. Department of Justice, *Introduction*, 64 Prosecuting Intellectual Property Crimes 1 (Jan. 2016); *see, e.g.,* U.S. Department of Justice, *U.S. Authorities Charge Owner of Most-Visited Illegal File-Sharing Website with Copyright Infringement* (Jul. 20, 2016), available online at https://www.justice.gov/opa/pr/us-authorities-charge-owner-most-visited-illegal-file-sharing-website-copyright-infringement .

>  **(2)** *Defendants.* Persons--as well as a vessel, cargo, or other property subject to admiralty process in rem--may be joined in one action as defendants if:
>
>> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>>
>> **(B)** any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2) (West 2017).  Many courts have determined that all "logically related" events underlying a legal cause of action are generally considered as comprising a transaction or occurrence.  *See, e.g., Mosley v. Gen. Motors, Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).  The Court may sever improperly joined parties at any time.  In resolving the Rule 20 factors, "the impulse is toward the broadest possible scope of action consistent with fairness to the parties and joinder of claims, parties and remedies is strongly encouraged," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

In the Complaint, WWE pleaded several facts which demonstrate that both joinder requirements are met in this case.  First, with respect to the "arising out of" element, WWE explains that by using a BitTorrent client to join a swarm and download the movie *Eliminators* (the "Work"), all Doe Defendants became part of a series of transactions in which they, along with other members of the swarm, uploaded and downloaded small pieces of the Work in a community effort to share the Work among swarm members.  Compl. ¶¶ 25-30 [Doc. 1].  Exhibit B to the Complaint documents infringement by each Doe Defendant in the period of less than 3 hours in a single day, December 26, 2016, suggesting that the Doe Defendants may have exchanged pieces of the Work among one another's computers during contemporaneous BitTorrent use.  Even if the Doe Defendants did not exchange pieces of the Work among themselves, they are likely to have downloaded from the same "seed" source over this period, or to have contributed to third-parties

who became seeds for other defendants.  *See* Expert Report of Robert Young (Feb. 10, 2015), attached as Exhibit 2 (reviewing the contributory nature of swarm interaction).

Second, there are several questions of law or fact common to all defendants which will arise in this action.  At base, WWE's claim against each Doe Defendant involves common questions of law regarding copyright infringement and digital piracy, as well as common questions of fact regarding registration of the Work and Defendants' use of BitTorrent protocol to infringe.  Because WWE has narrowly tailored its selection of Doe Defendants to those who infringed via the BitTorrent swarm over a single day, common questions also arise regarding all Doe Defendants' interaction in the swarm, download sources, and related online conduct.

As the Georgia Opinion seems to concede, these "technical requirements" of joinder under FRCP 20(a) have been met based on allegations in the Complaint.  *See* Georgia Opinion at *2, slip op. at 4.  Though this is not dispositive of the question raised in the OSC, it is important to note that these elements have been firmly established.  Thus, this Court has discretion to allow joinder based on considerations of fairness and judicial economy.

### B. Adopting the Georgia Opinion Approach Unfairly Punishes WWE For the Most Egregious Conduct of Other Copyright Plaintiffs.

Presumably due to the facts before it and other experiences with other counsel, neither of which are discussed in detail, the Georgia Opinion glosses over the idea that a thoughtful, well-managed multiple-Doe Complaint can promote judicial economy, at least for a significant portion of a case.  By relying on cases involving the most egregious abuses of joinder, the Georgia Opinion unfairly assumes that all copyright plaintiffs are alike – bound together by their desire to abuse legal process and extort consumers.  As a result, applying the Georgia Opinion to this case raises at least three problems:

First, the Georgia Opinion places too much emphasis on predicting (without any evidence) the behavior of Doe defendants and copyright plaintiffs. Citing a string of cases involving pornography producer Malibu Media, LLC as plaintiff, the Georgia Opinion lists several elements that are considered in evaluating the merits of severance:

> (i) the likelihood that each John Doe defendant will assert different defenses, thereby adding factual and legal questions that are not common among all defendants, (ii) many John Doe defendants are proceeding pro se, and will therefore incur significant expense serving papers and attending depositions of all other parties to the lawsuit, (iii) the likelihood that many of the John Doe defendants are not the actual individuals who illegally downloaded the motion pictures in question, (iv) the likelihood that joinder will facilitate coercive settlements among the John Doe defendants; and (v) plaintiff's avoidance of paying filing fees by pursuing mass actions.

Georgia Opinion at *2, slip op. at 5. The Georgia Opinion does not evaluate these factors individually. None of these factors favor severance here. Before Doe Defendants have filed either an answer or a motion to dismiss, it is impossible to know the extent to which their asserted defenses will overlap. No Defendant in this action has incurred substantial deposition costs and this Court is welcome to revisit joinder as the time for deposition approaches. The Georgia Opinion also conflates subscribers (or those who pay the internet bill) with the actual Doe Defendants (who are unknown absent some degree of investigation). If it becomes apparent that the Doe Defendant cannot be identified without undue burden on the subscriber or other parties, WWE takes steps to dismiss the Doe Defendant and provides notice to the relevant subscribers.[3]

Second, the Georgia Opinion relies too much on cases where joinder has been extraordinary. It cites to *Breaking Glass Pictures, LLC v. Does 1-99*, No. 1:13-cv-0882, 2013 WL 8336085 (N.D. Ga. Apr. 12, 2013), for the propositions that Courts "routinely sever all of the

---

[3] This evidentiary burden can remain low with joinder cases, because WWE has less economic incentive to avoid dismissal of individual Defendants from a multi-party case.

6

joined defendants but one" and that "the majority of district courts – including courts in this district – that have considered the swarm joinder theory have rejected it." Georgia Opinion at *3, slip op. at 5, 7.  Setting aside for a moment that the plaintiff in *Broken Glass* sought joinder of nearly 100 defendants, *Breaking Glass* relies principally on *On The Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 503 (N.D. Cal. 2011), in which the plaintiff sought joinder of over 5,000 defendants from several different states, some of whom were deceased.  *Id.* at 503 ("If I allow this matter to proceed with about 5000 defendants, it will create a logistical nightmare with hundreds if not thousands of defendants filing different motions, including dispositive motions, each raising unique factual and legal issues that will have to be analyzed one at a time.").  This is not a fair sample.  Cases that run smoothly do not usually give rise to written opinions on procedural issues – problem cases do – so the "majority of courts" test based on written decisions is inappropriate in this instance.  Rather, Plaintiff's district-by-district analysis found that 31 of 40 districts to have taken up similar joinder issues allowed joinder.  *See* Joinder Table, attached as Exhibit 3.

Instead of attempting to summarize similar trial court orders, this Court should rely on guidance from the Supreme Court's decision in *United States v. Mississippi*, 380 U.S. 128 (1965). In that case, the Supreme Court held that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African-Americans of the right to vote. *Id.* at 142. Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and involved common law and fact. *Id.* at 142-143.

7

Finally, the Georgia Opinion ignores cases in which joinder has been reasonable tailored to promote judicial and party efficiency.  *See, e.g., Digital Sin, Inc. v. Does 1-176*, 2012 WL 263491 (S.D.N.Y. 2012); *Raw Films v. John Does 1-15*, 2012 WL 1019067 (E.D. Pa. 2012).  *Digital Sin*, which was authored in this Circuit, is particularly instructive.  Resolving the question of joinder prior to serving the complaint, the Court wrote:

> it is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file—could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a).

*Digital Sin*, 279 F.R.D. at 244.  The Court explicitly remained open to revisiting joinder once defendants began to raise differing defenses:

> The Court remains open, however, to reconsidering this issue at a later date. Should John Doe defendants come forward to defend themselves against the allegations in the Complaint—potentially raising differing, conflicting defenses—the Court will remain open to any arguments against joinder of the parties that those defendants wish to make at that time. The Court will also remain open to hearing arguments regarding joinder or any other matters from the ISPs, should they move to quash Digital Sin's Rule 45 subpoena. The Court simply holds that for purposes of carrying out the initial, necessary discovery in an efficient manner, the claims may remain joined together at this time.

*Id*.  This middle-of-the-road approach takes seriously the allegations in the Complaint, but provides an avenue for severance if and when severance becomes appropriate.

In sum, the Georgia Opinion approach punishes copyright plaintiffs for the most egregious conduct of *other, unrelated copyright plaintiffs*, especially those with copyright in pornographic material.  The more nuanced approach in *Digital Sin* and, relatedly, in *DigiProtect USA Corp. v. Does 1–240*, No. 10 Civ. 8760 (PAC), 2011 WL 4444666 (S.D.N.Y. Sep. 26, 2011), takes seriously the benefit of joint initial procedures and reserves judgment on severance until more than one defendant has raises a meritorious defense.

### C. Joinder of the Doe Defendants In This Case Promotes Judicial Economy and the Interests of All Parties.

Even where the elements set forth in FRCP 20(a)(2) are met, the Court "has discretion to deny joinder if it determines that the addition of a party . . . will not foster the objectives of the rule, but will result in prejudice, expense, or delay."  Georgia Opinion at *2, slip op. at 4 (citing *Malibu Media, LLC v. Doe*, 923 F. Supp. 2d 1339, 1341 (M.D. Fla. 2013)).  Such a determination may be tailored to an individual case and severance, though appropriate at some point in the litigation, may be inappropriate before resolution of pretrial issues (where joinder is helpful).

> The solution does not lie in wholesale severance, and the cases cited by defendants do not support that result. . . . Rather, fairness to the parties may be maximized by permitting plaintiffs to litigate the issues of joint activity in this court, and then transferring the questions which turn on the particular facts of each accident to the federal districts in which the accidents occurred. *See* 28 U.S.C. § 1404(a), Rules 20(b) and 42(a) and (b), Federal Rules of Civil Procedure. Whether this procedure would entail full separate trials of different issues, or special findings of fact in this court, or other possible procedures, will be decided after consideration [other preliminary issues] and in consultation with the parties.

*Hall v. E. I. Du Pont De Nemours & Co.*, 345 F. Supp. 353, 381 (E.D.N.Y. 1972) (Weinstein, J.); RICHARD L. MARCUS & EDWARD F. SHERMAN, COMPLEX LITIGATION: CASES AND MATERIALS ON ADVANCED CIVIL PROCEDURE 38-45 (3d ed. 1998) (discussing *Hall*); *see also Digital Sin*, 279 F.R.D. at 244.

With respect to *initial* joinder, plaintiffs are often put in a no-win situation.  If a copyright plaintiff brings a case against several related Doe Defendants, then it risks motions to sever or, as here, *sua sponte* action from the Court.  *See, e.g., Arista Records, LLC v. Doe 3*, 604 F.3d 110, 113 (2d Cir. 2010) (affirming the denial of a motion to quash subpoena or sever Doe defendants).  If, alternatively, a plaintiff brings a case against an individual, then the copyright plaintiff risks a motion to dismiss for failure to join.  *See, e.g., Voltage Pictures, LLC v. Blake*, No. 3:14-cv-1975-

AC, Dkt. 21 (D. Or. May 27, 2015); *Dallas Buyers Club v. Fernandez*, 3:15-cv-00444-AC, Dkt. 15 (D. Or. Jul. 9, 2015).

Here, WWE has elected to join a small group of defendants who infringed on the same copyrighted work in a closely-related timeframe. These defendants were selected by culling data related to infringements to identify only the most egregious offenders, who are also involved in infringement of other works. In this case, joinder of this set of Doe Defendants throughout pretrial litigation operates to *reduce* prejudice, expense, and delay, at least at the current stage of the proceedings for at least three reasons:

> ### 1. *Multiple-Doe Pretrial Litigation Helps Reduce the Size of a Copyright WWE's Individual Demand and Enable Flexible Settlement.*

At the summons and initial settlement stage, each Doe Defendant benefits from the fact that they were joined with others. WWE, who faces less financial burden from filing and whose recovery does not depend on one defendant's liability, is left free to make all reasonable efforts to minimize the size of any individual settlements. With joined cases, WWE has latitude to substantially reduce or even waive costs, fees and damages when there is clear financial hardship to the Doe Defendant. Without disclosing too many settlement details, WWE notes that many settlements in this case and related cases have been well below costs and the statutory damages available for willful infringement, a result which would be made more difficult in single-Defendant litigation.

If WWE was required to bring each case individually, minimum statutory damages and the filing fee alone would total $1,150 (calculated as $750 statutory damages and $400 filing fee), without factoring in any additional costs of bringing an action. WWE would be under unnecessary financial pressure to seek larger settlement values to offset its costs or to require substantially more evidence before dismissing any individual defendant. Joinder of multiple Does who infringe

within a reasonable timeframe helps ensure even-handed enforcement of WWE's rights in an effort to combat a culture of infringement.

### 2. *Plaintiff's Counsel Has a Record in This Court of Reducing Individual Cases to a Reasonable Number of Defendants.*

Plaintiff's counsel currently represents three copyright holders before this Court: WWE; ME2 Productions, Inc. ("ME2"); and LHF Productions, Inc. ("LHF"). Plaintiff's counsel has filed seven cases (including this case) for these copyright holders, grouping defendants into cases based on the time and severity of the infringement, with the following results:

*LHF v. Does 1-15,* **Case No. 16-cv-1393:**[4] Out of the original 15 Does only two were ultimately named in the proper person; the remaining Does have settled or otherwise been dismissed. One of these Does engaged counsel and has been given an extension to answer, and the other currently is subject to a default order.

*LHF v. Does 1-11,* **Case No. 16-cv-1689-JAM:** Out of the original 11 Does, LHF is requesting permission to file an Amended Complaint that names only three in the proper person; the remaining Does have settled or otherwise been dismissed.

*ME2 v. Does 1-11,* **Case No. 16-cv-1834-JCH:** Out of the original 11 Does, ME2 only one Doe has been named in the proper person; the remaining Does have settled or otherwise been dismissed.

*ME2 v. Does 1-14,* **Case No. 16-cv-01835-JCH:** Out of the original 14 Does, only six Does remain, two of which are corporations.

*ME2 v. Does 1-19,* **Case No. 16-cv-1837-JCH:** All 19 Does have been dismissed, none were named in the proper person.

*ME2 v. Does 1-12,* **Case No. 16-cv-01838-JCH:** Out of the original 12 Does, only two remain.

*WWE v. Does 1-14,* **Case No. 17-cv-00572-JAM:** This case was filed very recently.

---

[4] LHF's motion for leave to file an Amended Complaint originally sought to name a third Doe in the proper person. That Doe ultimately settled with LHF before LHF filed its Amended Complaint. Consequently, as a courtesy to that Doe, LHF held off filing its Amended Complaint and filed an amended motion for leave to file a new Amended Complaint that did not name that Doe in the proper person.

11

While all cases are unique, this history shows that the number of defendants usually dwindles quickly due to productive conversations between subscribers, defendants, and their counsel, on the one hand, and plaintiff's counsel on the other.  Indeed, many times these conversations lead to the defendant discovering for the first time that someone in his or her household is illegally downloading copyrighted materials, at which point defendant can take remedial action.  In these situations, the subscriber usually fixes the problem voluntarily, thus preventing more serious consequences for both the plaintiff and the defendant.

### 3. *Multiple-Doe Pretrial Litigation Allows One Defendant to Benefit From the Work of Another.*

Before the parties have filed all pleadings and entered discovery, the Doe Defendants generally benefit from each other's joinder.  For example, if any one Defendant filed a motion to dismiss raising a meritorious defense, then each other Defendant could easily join the motion.  Similarly, if a group of Defendants fails to timely answer, one Defendant's motion to vacate default might be joined by all Defendants in default.  In that way, the average cost to a Defendant to litigate, at least preliminarily, is substantially lessened.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Plaintiff WWE Studios Finance Corp. respectfully states that good cause exists for the present form of joinder in this case and that severance, at least at this stage of the proceedings, is inappropriate, because it would lead to wasteful, inefficient individual litigation to the detriment of all parties.

Respectfully submitted,

/s/ Jan I. Berlage
Jan I. Berlage (ct16090)
Gohn Hankey Stichel & Berlage LLP
201 N. Charles Street, Suite 2101
Baltimore, MD 21201
410-752-9300
410-752-2519 (fax)
jberlage@ghsllp.com

*Attorney for WWE Studios Finance Corp.*

## **CERTIFICATE OF SERVICE**

At the time of this filing the identities of the Doe Defendants is unknown, and therefore, Plaintiff is unable to serve this Memorandum on them.

                                            /s/ Jan I. Berlage
                                            Jan I. Berlage (ct16090)